**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DEIDRE L. MONROE**
Lake Superior Court, Juvenile Division
Public Defender's Office
Gary, Indiana

ATTORNEYS FOR APPELLEE:

**ALEJANDRO ROSILLO**
DCS, Lake County Office
Gary, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED

Jan 31 2013, 9:14 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF THE INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF V.M. (Minor Child) and | ) ) ) ) ) |
| M.A. (Mother), | ) ) |
| Appellant-Respondent, | ) ) |
| vs. | ) No. 45A03-1205-JT-221 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner. | ) ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Mary Beth Bonaventura, Judge
Cause No. 45D06-1110-JT-220

**January 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary and Issue**

This case involves a sadly familiar circumstance in which a mother's patterns of substance abuse, substance-related criminal conduct, and instability are so protracted as to result in the termination of her parental rights. M.A. ("Mother") appeals the trial court's involuntary termination of her parental rights to her child, V.M. Finding that the evidence is sufficient to support the trial court's conclusion that there is a reasonable probability that the conditions that led to V.M.'s removal would not be remedied and that termination is in the child's best interest, we affirm.

**Facts and Procedural History**

Mother began using marijuana when she was a teenager, and by her early twenties, she was using cocaine and heroin. She became addicted to heroin, taking as many as six to eight injections of it daily. She also began taking various other narcotics.

In 2002, Mother's young child died of suffocation while sleeping with her. On June 14, 2006, Mother gave birth to V.M., and two years later, when Mother pled guilty to heroin possession, the Department of Child Services ("DCS") removed V.M. from Mother's care. V.M. was adjudicated a CHINS while Mother was serving probation, and when Mother completed the services ordered, she and V.M. were reunited.

In January 2010, DCS removed V.M. from Mother and placed him with his paternal grandparents based on a report that Mother used marijuana while V.M. was in her care, sold her food stamps for drug money, threatened to commit suicide, and failed to obtain medical treatment for V.M. when he had a blood infection. She was still on probation for the heroin

2

conviction and was living in a car. In June 2010, the trial court adjudicated V.M. a CHINS and ordered Mother to participate in numerous services, including substance abuse evaluation and treatment, random drug screens, psychological evaluation and treatment, parenting classes, supervised visitation, and individual therapy. She also was ordered to obtain suitable housing. Her substance abuse evaluation rendered a diagnosis of opioid dependence with physiological dependence, and the evaluating mental health therapist Christine Gesiorski recommended that she undergo six months of intensive inpatient treatment. Mother completed a detoxification program but did not enter the inpatient program. Gesiorski made repeated, unsuccessful attempts to contact Mother to conduct ongoing drug screens, and the referrals were eventually closed for noncompliance. Although Mother did not complete her mental health treatment program in this case, her mental health treatment records from the prior CHINS case show that she suffers from major depressive disorder and moderate chronic post-traumatic stress disorder, in addition to polysubstance abuse dependence. Mother entered a group home, but was asked to leave when she tested positive for alcohol and failed to pay her rent. She tested positive for marijuana in April 2010, in violation of her probation. During the twenty-month pendency of the CHINS case, Mother failed to attend three of the four hearings and her whereabouts were sometimes unknown.

In October 2011, DCS filed a petition to terminate Mother's parental relationship with V.M. Shortly thereafter, DCS removed Mother's nine-year-old daughter R.A. from her,

3

placed her with V.M. at the paternal grandparents' home,[1] and initiated CHINS proceedings based on a report that R.A. had witnessed Mother stealing money and using intravenous drugs. At a March 2012 hearing on the termination petition for V.M., Gesiorski testified in part that

> A person who is addicted to drugs does not have the ability to effectively parent, especially with heroin, because heroin really affects the pleasure principle of our brain, and what could happen—what will—really because of it being so pleasurable, the user will do anything that they have to to get the heroin, you know, and—which could lead to legal [sic] behavior and, you know, neglect of the children[.]

Tr. at 96. Gesiorski described Mother's likelihood of relapse as very high and said that it was typical for a person with drug addiction to be involved in criminal activity fueled by that addiction. *Id*. at 98. On April 4, 2012, the trial court issued an order terminating Mother's parental relationship with V.M. Mother now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

Mother challenges the sufficiency of evidence to support the trial court's judgment terminating her parent-child relationship with V.M. When reviewing a trial court's findings of fact and conclusions thereon in a case involving the termination of parental rights, we apply a two-tiered standard of review. *In re M.W.*, 943 N.E.2d 848, 853 (Ind. Ct. App. 2011), *trans. denied*. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. *Id.* We will set aside the

---

[1] Throughout the pendency of the CHINS and termination proceedings, V.M. was in a relative placement with his paternal grandparents.

trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous where the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.* In conducting our review, we neither reweigh evidence nor judge witness credibility. *In re A.I.*, 825 N.E.2d 798, 805 (Ind. Ct. App. 2005), *trans. denied*. Rather, we consider only the evidence and inferences most favorable to the judgment. *Id.*

In *Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143 (Ind. 2005), our supreme court stated,

> The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. A parent's interest in the care, custody, and control of his or her children is perhaps the oldest of the fundamental liberty interests. Indeed the parent-child relationship is one of the most valued relationships in our culture. We recognize of course that parental interests are not absolute and must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. Thus, parental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.

*Id.* at 147 (citations, quotation marks, and alteration omitted).

To obtain a termination of the parent-child relationship between Mother and V.M., DCS was required to establish:

(A) that one (1) of the following is true:

(i) The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation

5

department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B)     that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). In recognition of the seriousness with which we address parental termination cases, Indiana has adopted a clear and convincing evidence standard. *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 377 (Ind. Ct. App. 2006), *trans. denied.*

First, Mother asserts that the record does not support the trial court's conclusion that a reasonable probability exists that conditions leading to V.M.'s removal will not be remedied.[2] When assessing whether there is a reasonable probability that conditions that led to the child's removal will not be remedied, we must consider not only the initial basis for the

---

[2] Mother also challenges the trial court's findings and conclusion that there is a reasonable probability that the continuation of her relationship with V.M. poses a threat to V.M.'s well-being. Indiana Code Section 31-35-2-4(b)(2)(B) requires DCS to prove only *one* of the three circumstances listed. Because we find no error concerning the reasonable probability of unremedied conditions, we need not address the threat to the child's well-being.

6

child's removal, but also the bases for continued placement outside the home. *In re A.I.*, 825 N.E.2d at 806. Moreover, "the trial court should judge a parent's fitness to care for [her] children at the time of the termination hearing, taking into consideration evidence of changed conditions." *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. "Due to the permanent effect of termination, the trial court also must evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Id*. For example, the court may properly consider evidence of a parent's substance abuse, criminal history, lack of employment or adequate housing, history of neglect, and failure to provide support. *McBride v. Monroe Cnty. Office of Family & Children*, 798 N.E.2d 185, 199 (Ind. Ct. App. 2003). In making its case, "DCS need not rule out all possibilities of change; rather, [it] need establish only that there is a reasonable probability that the parent's behavior will not change." *In re Kay.L.*, 867 N.E.2d 236, 242 (Ind. Ct. App. 2007). "[A] trial court need not wait until a child is irreversibly influenced by a deficient lifestyle such that his or her physical, mental, and social growth is permanently impaired before terminating the parent-child relationship." *Castro*, 842 N.E.2d at 372.

Here, V.M. had a previous CHINS determination based on Mother's conviction for heroin possession. This time, he was removed from her based on a report that she was selling her food stamps for drugs, had a history of substance abuse, and was not giving him the medicine required to treat a blood infection. Both times, V.M.'s removal was drug-related, which illustrates a destructive pattern in Mother's life. Her pattern of drug use includes abuse of prescription drugs, marijuana, cocaine, and heroin, and her ten-year criminal history

7

includes substance-related offenses such as heroin possession, public intoxication, and reckless endangerment associated with intoxication. Her criminal history also includes offenses such as theft and possession of counterfeit money. Her penchant for drug use has negatively affected her ability to meet her daily obligations, as she has chosen to spend her money, whether legally or illegally obtained, to support her habit rather than to provide for V.M.'s needs. Moreover, her psychological test results indicate that she is at high risk for relapse, and throughout the pendency of the proceedings, she has demonstrated a pattern of inconsistency, relapse, and noncompliance that is consistent with those test results. DCS case manager Alyse Scholl testified that Mother lacked stability and coping skills and that she repeatedly failed to comply with the offered services despite Scholl's repeated referrals. Tr. at 35-36, 40. With respect to Mother's housing, Scholl testified that

> There were times where we weren't sure where [Mother] was living. There were times where she was arrested for a DUI while on probation and driving on a suspended license, so she was in jail, and we hadn't received any—she didn't participate in any random drug screens.
> ….
>
> There were times where, again, we weren't sure where she was living. There are other times where she was staying with her grandfather. … It was reported that she was also living at times with her husband … and at one point she was—we had just—we weren't sure. Other places.

*Id.* at 38-39. Scholl later testified that Mother had moved at least six times during the pendency of the CHINS and termination proceedings. *Id.* at 59. In making her final recommendation that Mother's parental rights be terminated, Scholl also testified that Mother's history of moving in and out of various jobs leaves her unable to financially support V.M. *Id.* at 61. Although at times she has complied with her court-ordered services and has

8

passed drug tests,[3] she has repeatedly reverted to her destructive habits. She failed to appear for several hearings during the pendency of the CHINS and termination proceedings, and she failed to consistently attend supervised visitation sessions with V.M., missing five sessions in a four-month period. *Id*. at 44. These failures resulted in the cancellation of her visitation privileges.

Mother's pattern of parenting her other children has had negative, even tragic results. In 2002, Mother's infant child died from suffocation while sleeping with her. In 2010, her nine-year-old daughter R.A. was removed from her care after R.A. witnessed her using intravenous drugs and stealing bottles of pills from her grandfather's safe. Later, during visitation, R.A. broke her arm while playing with Mother, and Mother instructed her not to report the broken bone. *Id*. at 77.

In short, Mother's destructive patterns do not bode well for her prospects of successfully parenting V.M. She is a polysubstance drug abuser who suffers from mental illness and depression. She can scarcely care for herself, let alone for V.M. She had the opportunity to show that she could change these patterns when she was reunified with V.M. after his first CHINS case, and she did not. To the extent that she asks us to reverse the trial court's decision based on her recent isolated successes in completing services in R.A.'s CHINS case, she invites us to reweigh evidence, which we may not do. The unchallenged

---

[3] DCS case manager Misti Perez testified without objection that on one occasion prior to taking a drug screen, Mother had attempted to cleanse her system by drinking excessive amounts of water and vinegar. Tr. at 22.

findings and the record as a whole support the trial court's conclusion that there is a reasonable probability that the conditions that led to V.M.'s removal will not be remedied.

Mother also challenges the trial court's conclusion that the termination of her parental rights is in V.M.'s best interests. Ind. Code § 31-35-2-4(b)(2)(C). Again, we recognize Mother's fundamental liberty interest in parenting V.M., but we are also mindful that her parental interests are not absolute, must be subordinated to V.M.'s interests, and may be terminated if she is unable or unwilling to meet her parental responsibilities. *In re G.Y.*, 904 N.E.2d 1257, 1259-60 (Ind. 2009). With respect to best interests, Mother challenges the trial court's finding that she "does not have stable housing and has moved at least six times in under two years. Mother still does not have appropriate housing for the child. Mother does not have financial stability."[4] Appellant's App. at 2. Although not dispositive, permanency and stability are key considerations in determining the best interest of a child. *G.Y.*, 904 N.E.2d at 1265.

Here, the trial court found that the five-year-old V.M. had "spent almost four years out of parental care due to the parent's drug issues," that he had been in the current placement with his paternal grandparents for two years, and that his older sibling was also living with the grandparents. Appellant's App. at 3. The court also found that V.M. was "bonded and thriving in [his grandparents'] home" and that Mother was not providing any emotional or financial support for him. *Id.* DCS case manager Scholl observed that by the time of the

---

[4] The record indicates that Mother has held ten different jobs, having resigned from many of them for various reasons.

termination hearing, Mother and V.M. did not have a bond. Tr. at 47. She emphasized Mother's history of drug use and relapse as well as the effect of the two removals on V.M., and when asked whether a third attempt to reunify V.M. with Mother would be damaging to his emotional well-being, she responded, "[Y]es. If he were removed again, absolutely." *Id*. at 58.

In sum, the evidence supports the trial court's conclusion that the involuntary termination of Mother's relationship with V.M. is in V.M.'s best interests. To the extent that Mother cites her recent compliance in R.A.'s CHINS case and asks that we consider the general pain and suffering endured by a child who is separated from his mother, she simply invites us to reweigh evidence and judge witness credibility, which we may not do.[5] Finally, we note that the trial court's ultimate conclusion is supported by numerous unchallenged findings. Accordingly, we affirm the trial court's judgment terminating the parent-child relationship between Mother and V.M.

Affirmed.

KIRSCH, J., and MATHIAS, J., concur.

---

[5] In her brief, Mother's counsel characterizes DCS's objective as the "continued destruction of the family structure." Appellant's Br. at 11. We admonished Mother's counsel for using the same intemperate language in a prior unpublished decision. *In re J.K.*, No. 45A03-1201-JT-45 (Ind. Ct. App. Aug. 29, 2012). We caution counsel that we may exercise our plenary power to strike her brief if she does so again.